IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

IN RE: CROSSETT FORD LINCOLN LLC,   CASE NO.: 1:15-bk-70747
  DEBTOR         CHAPTER 7

RENEE S. WILLIAMS        PLAINTIFF

V.      AP NO.: 1:17-ap-07020

PIRS CAPITAL, LLC, ET AL      DEFENDANTS

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is *PIRS Capital, LLC's Motion to Set Aside Default Judgment* ("Motion") filed on January 22, 2021, at docket entry 40. Two parties responded: Renee S. Williams, Chapter 7 Trustee ("Trustee"), filed her *Response to PIRS Capital, LLC's Motion to Set Aside Default Judgment* on January 29, 2021, at docket entry 46, and Maurice Bailey ("Bailey") filed his *Maurice Bailey's Response to Motion to Set Aside Default Judgment* on February 1, 2021, at docket entry 49. The court heard this matter on March 11, 2021. PIRS Capital, LLC appeared personally and by and through its counsel; Bailey appeared by and through his counsel; the Trustee appeared on her own behalf. At the conclusion of the trial, the court took this matter under advisement. For the reasons stated herein, the relief requested in the Motion is denied.

### I. Jurisdiction

This court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (F). The following opinion and order constitute findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## II.  Facts

### A.  Predicate

The Trustee, acting in her capacity as the duly appointed Chapter 7 Trustee in the Crossett Ford Lincoln LLC ("Crossett Ford") bankruptcy, on March 14, 2017, sued PIRS Capital, LLC ("PIRS") in her *Complaint to Avoid Preferential Transfers, for Turnover of Funds, and for Disallowance of Claims* ("Complaint").  The Trustee served PIRS by correspondence dated March 14, 2017, with process by certified mail and addressed as follows:

> PIRS Capital, LLC
> Attention: Alexander Parsol, Managing Partner
> 40 Exchange Pl., Suite 1607
> New York, NY 10005

(Bailey's Exhibits B–C.)  The service letter and accompanying materials were expositive and provided all the information the addressee needed to alert it of the lawsuit and the requirement to file a responsive pleading within a specified period.  (Bailey's Ex. B.)

PIRS did not respond or otherwise appear.  The Trustee, accordingly, obtained a default judgment.  PIRS seeks relief from this burden on three bases: first, that service was improper and, thus, the judgment is void pursuant to Federal Rule of Civil Procedure 60(b)(4)[1] as this court lacked jurisdiction; second, that PIRS never had a full and fair opportunity to litigate its defenses to the Trustee's action and should be accorded relief pursuant to Federal Rule of Civil Procedure 60(b)(6); and third, that the Trustee did not properly comply with the default procedures outlined

---

[1] Federal Rule of Civil Procedure 60 is made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9024.

in Federal Rule of Civil Procedure 55(b).[2]  The court need only address the first two issues as PIRS produced no proof and made no argument at trial concerning the third.[3]

## B.  Service

PIRS suggests that service was insufficient on the bases that (1) Alexander Parsol ("Parsol"), the person named on the service letter, was no longer with PIRS, and that (2) while the building address was correct, PIRS had moved to a different suite.  PIRS is correct on both points: Parsol was no longer with PIRS in March 2017, and PIRS had moved to a different suite in the same building prior to that time.  Facially, service was to the wrong person at the wrong address, and insufficient service, as discussed below, renders a judgment void and amenable to being set aside upon application.

The Trustee, however, argues that she fully complied with her obligation to effect service on PIRS pursuant to Federal Rule of Bankruptcy Procedure 7004 "by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process[.]"  FED. R. BANKR. P. 7004(b)(3) (2021).  Having done so, then presumably, this court had personal jurisdiction over PIRS as contemplated by Federal Rule of Bankruptcy Procedure 7004(f) to enter the default judgment.  Thus, the inquiry is into the sufficiency of the Trustee's service of the Complaint in accordance with Federal Rule of Bankruptcy Procedure 7004(b)(3).

---

[2] Federal Rule of Civil Procedure 55 is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7055.

[3] The court is not offended by the procedure used by the Trustee.  The clerk of the bankruptcy court entered her default pursuant to Federal Rule of Civil Procedure 55(a) before the court entered the default judgment pursuant to Federal Rule Civil Procedure 55(b).  *See Nextgear Capital, Inc. v. Ark. Auto Exch., Inc.*, No. 4:14-CV-256 JMM, 2015 WL 11108980, at *1 (E.D. Ark. Jan. 5, 2015) ("Entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)").

1.  Alexander Parsol

The Trustee served "PIRS Capital, LLC, Attention: Alexander Parsol, Managing Partner." (Bailey Ex. B.)  Andrew Mallinger ("Mallinger"), PIRS's Chief Operating Officer, testified at trial on behalf of PIRS and indicated that Parsol had, at one time, held both a membership and a percentage interest in receivables owed to PIRS.  (PIRS's Exhibit 1.)  Mallinger testified that Parsol's relationship with PIRS terminated on February 1, 2016, and offered in support an Assignment of Membership Interest and Receivables.  (PIRS's Ex. 1.)  Further, Mallinger testified that the Crossett Ford deal was basically Parsol's, and he did not keep others in the loop. Regardless, the Merchant Agreement between Crossett Ford and PIRS, dated January 20, 2015, is bereft of any signature on behalf of PIRS or designation of the "Company Officer" involved. (PIRS's Ex. 4.)  Mallinger also testified that after Parsol left, he, along with two others, became responsible for PIRS's operations.

If, however, Parsol left PIRS and was no longer with the company in March 2017, his name maintained a visible and consequential presence.  Specifically, the Trustee's due diligence in ascertaining how best to comply with the rules concerning service led directly and exclusively to Parsol.

The Trustee looked to PIRS's Proof of Claim filed on April 24, 2015; the claim is based on "merchant cash advance[s]" in the amount of $137,682.  (Bailey's Ex. A.)  Parsol signed and filed the Proof of Claim as the "Managing Partner" of PIRS with an address of "40 Exchange Pl. #1607 New York NY 10005."  (Bailey's Ex. A.)  Parsol inserted his email address, aparsol@pirscapital.com, and the same address under the category of "[n]ame and address where notices should be sent."  (Bailey's Ex. A.)

This notice language on the Proof of Claim is not insignificant, but rather is emphasized in the printed portion on the claim form in two additional places, each specifically tailored to the name and address provided.  First, the accompanying Instructions for Proof of Claim Form provide that the name and address portion of the claim should be filled in with the "name and address of the person who should receive notices issued during the bankruptcy case. . . . The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)."[4]  (Bailey's Ex. A.)  Second, the same instructions note that the filer's date and signature line should also include an "address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices."  (Bailey's Ex. A.)  On that portion, Parsol included his name as "Managing Partner," with the same address, telephone number, and email address.  (Bailey's Ex. A.)  Parsol is the only individual name that appears on the Proof of Claim; the two addresses are the same; PIRS has not amended or updated either; each plainly implicate service.

To "confirm that Mr. Parsol was the appropriate agent," the Trustee also researched the New York State Department of State (sometimes "DOS") records.  A Division of Corporations

---

[4] Federal Rule of Bankruptcy Procedure 2002(g) provides:

> (1) [n]otices required to be mailed under Rule 2002 to a creditor, indenture trustee, or equity security holder shall be addressed as such entity or an authorized agent has directed in its last request filed in the particular case. For the purposes of this subdivision—
>> (A) a proof of claim filed by a creditor or indenture trustee that designates a mailing address constitutes a filed request to mail notices to that address, unless a notice of no dividend has been given under Rule 2002(e) and a later notice of possible dividend under Rule 3002(c)(5) has not been given[.]

FED. R. BANKR. P. 2002(g) (2021).

printout reflecting a DOS filing date of May 29, 2013, and effective through February 27, 2017, states "None" under the Registered Agent category. (Bailey's Ex. K.) The "Selected Entity Address Information" category subtitled "DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)" is as follows:

> ALEXANDER PARSOL
> 40 EXCHANGE PLACE, SUITE 1606
> NEW YORK, NEW YORK, 10005

(Bailey's Ex. K.)

Accordingly, as of March 2017, PIRS's Proof of Claim as well as the most current New York State Department of State website both reflected Parsol as the appropriate person for service of process with the latter having no substitute or other listed person as its agent for service. When asked why Parsol was still listed as the person to whom the New York State Department of State should mail process, Mallinger answered "[i]t was an administrative error." Parsol had left PIRS a year earlier.

The Trustee's certified mail service letter is addressed to PIRS to the attention of Parsol as its managing partner.[5] (Bailey's Ex. B.) But Parsol did not sign for the letter. Rather, the separate return receipt, sometimes referred to as the "green card," reflects delivery on March 17, 2017, to an unreadable signature followed by the printed name: "A. LARRANAGA." (Bailey's Ex. C.) According to Mallinger, A. Larranaga ("Larranaga") was a PIRS's employee acting as an assistant underwriter on March 17, 2017. Additionally, Mallinger testified that Larranaga was not an officer, manager, or general agent and was not otherwise authorized to accept service. He further testified that Larranaga had no memory of signing for the letter or doing anything with it; Mallinger

---

[5] The U.S. Postal Service Certified Mail Receipt is addressed to "PIRS Capital, LLC c/o Alexander Parsol." (Bailey's Ex. B.)

6

assumed it was forwarded to Parsol.  Mallinger also testified that PIRS was frequently involved in litigation both as a plaintiff and defendant and was not aware of any other lawsuits sent to Parsol that PIRS did not receive.

The Trustee's letter did not, however, require the addressee's signature.  The U.S. Postal Service Certified Mail Receipt reflects the Trustee paid a $3.35 "Certified Mail Fee."  (Bailey's Ex. B.)  The same receipt contains five check boxes under the category of "Extra Services & Fees." They are:

> Return Receipt (hardcopy)
> Return Receipt (electronic)
> Certified Mail Restricted Delivery
> Adult Signature Required
> Adult Signature Restricted Delivery

(Bailey's Ex. B.)  The only box checked is for a "Return Receipt (hardcopy)" for $2.75.  (Bailey's Ex. B.)  Accordingly, the Trustee paid for and requested only a return receipt from the address and did not restrict delivery to Parsol.  On the green card receipt, three boxes are checked under the category "Service Type:" Adult Signature, Certified Mail, and Return Receipt for Merchandise. (Bailey's Exs. B–C.)  Parsol did not have to sign for the letter.

Despite the letter actually being received at PIRS's office, Mallinger testified that PIRS had a policy regarding mail to individuals that were no longer employed.  That policy was to forward the letter to that person, even if mailed to Parsol as a managing partner.  This procedure is incongruous with the actual addressee of the letter—PIRS on the first line and then to the attention of Parsol as managing partner on the second.  A reasonable appreciation of the addressee would reflect that this is a document directed to PIRS.

## 2. Address

PIRS did business at 40 Exchange Place, suite 1607 and was doing so at the time Parsol filed on PIRS's behalf the Proof of Claim in the Crossett Ford bankruptcy.  As outlined above, PIRS's Proof of Claim references suite 1607 in the two places where addresses were required, including the "address where notices should be sent" section.  (Bailey's Ex. A.)  Also pertinent is the language that indicated the filer had an ongoing obligation to update any change in address. (Bailey's Ex. A.)

PIRS moved to suite 403 in the same 40 Exchange Place building in September 2016.  PIRS did not amend its Proof of Claim, file any type of appearance or request for notice in the Crossett Ford bankruptcy, or otherwise notify the Trustee or any party in the Crossett Ford bankruptcy of this changed address.

Additionally, PIRS did not, contemporaneous with its move—or for a while thereafter—change its address with the New York State Department of State.  As discussed above, the records at the New York State Department of State in February 2017 did not reference the suite 403 address.  (Bailey's Ex. K.)  Rather, PIRS's listing with the Department of State contained a wrong address, listing suite 1606 versus the correct suite 1607.  (Bailey's Ex. K.)  The Trustee testified that she noted the discrepancy and elected to use the 1607 number because it was expressed on the Proof of Claim.  Although the Trustee did not review PIRS's webpage, a March 2017 capture of their webpage reflects under Contact Information: "[a]ddress: 40 Exchange Pl, New York, USA." (PIRS's Ex 10.)  There is no reference to a suite number.[6]  (PIRS's Ex. 10.)

---

[6] A May 2017 capture of PIRS's website reflects the same 40 Exchange Place address but references suite 403.  (PIRS's Ex. 11.)

Regardless, the testimony is clear that Larranaga, a PIRS's employee working in suite 403, did in fact receive the letter, thus confirming that by certified United States mail PIRS received the Trustee's letter of service. Mallinger had no explanation for how Larranaga, who was not in suite 1607 but in suite 403 at the time, received and signed for the letter.

Mallinger testified that some mail was marked undeliverable and that some forwarded mail was not getting to PIRS. Although PIRS was frequently involved in litigation, including bankruptcies and proofs of claim, Mallinger testified that the Crossett Ford case was simply not on his radar. Additionally, and somewhat surprisingly for any business entity, Mallinger could not remember if PIRS left a forwarding address with the post office when they moved and could not assume that mail sent to suite 1607 was forwarded. Basically, he recalls that all PIRS did at the time was to update vendors, its website, and Google. His testimony in that regard is not necessarily supported by PIRS's Exhibits 10 and 11 concerning its website. Specifically, PIRS's Exhibit 10, the website capture, referenced 40 Exchange Place with no suite number. Mallinger also intimated that he was not aware of PIRS receiving other mail addressed to suite 1607 at suite 403.

Mallinger was a candid and credible witness. To his credit, on cross examination, he acknowledged the self-evident oversights with respect to PIRS amending its Proof of Claim and filing with the New York State Department of State. Specifically:

> When asked "[d]o you know why you wouldn't have amended this proof of claim to update your address?" He replied. "Uh yes, this was filed in April which was about a month after I came onto PIRS Capital, so I wasn't privy to a lot of the actions and a lot of the work that was done before my time entering PIRS Capital. Uh, and, further, when Mr. Parsol was bought out of the business and reduced his day to day exposure to zero, umm, things obviously fell through the cracks, and the only reason we wouldn't have updated this is because I wasn't aware of it and was not told of this upon Mr. Parsol exiting the company."

9

When asked "[o]kay, would your attorneys of at least been aware of this proof of claim and your change of address?"  He answered.  "Uh no because Mr. Wolkind [PIRS's attorney]  was not brought on during this time.  He was brought on later on to handle all of our third-party collections and legal matters. So, he wasn't involved in working with Mr. Parsol in regards to filing or dealing with this matter. It was too early in terms of when we picked up uh the slack, I guess you could say, for lack of better terms."

When asked "[i]f you didn't have an attorney working on the cases prior to Mr. Wolkind coming on and Mr. Parsol left while there were pending cases, do you think there's several other proofs of claim that could have fallen through the cracks without an updated address?"  He answered.  "At this point, I believe not because we would have eventually had to deal with them and this is the only one we were made aware of in terms of falling through the cracks, I guess you could say. But I would imagine that any legal matter prior to my coming on and Mr. Wolkind coming on was probably not properly managed."

Mallinger was also questioned concerning procedures PIRS had in place to deal with letters sent to purportedly the wrong suite.  PIRS may or may not have forwarded mail, and equally, PIRS may have received bankruptcy notices and Trustee mailings but forwarded them unopened to Parsol as personal mail.  Additionally:

When asked "[w]hat procedures did PIRS have in place in case important information came through that was sent to 1607 instead of 403?"  He answered. "Again, making sure that any active legal proceedings that we were aware of  uh making sure we updated addresses, making sure we called and contacted vendors and customers and making sure our website was eventually updated as well as Google uh was updated um in as timely of a fashion as possible. We were obviously running a business that was in high growth and things were happening quickly so uh obviously some of the administrative actions uh that should have been taken were not uh and that's obviously our fault. However, we did our best in terms of making sure that everything that we were aware of at the time and all of our customers that we actively engaged with uh we made sure they were aware of our new address."

When asked "[d]id you receive mail at suite 403 that was addressed to suite 1607 between September 2016 and March of 2017, to your knowledge?"  He answered.  "Not that I am aware of, no."

When asked "[s]o any mail sent to the incorrect address, you did not receive, to your knowledge." He answered. "To my knowledge no, no, we did not. And we received emails and calls at that point where mail had potentially bounced back asking us to update and tell whoever it may have been what the new address was. Uh, so, I do remember we went through that process. However, in terms of proactively changing everything, there could have been administrative lapses in terms of us updating our address everywhere we needed to."

When asked "[d]id you have any concerns that important legal documents were being sent to 1607 after you moved to 403? Did you take steps to have the mail forwarded?" He answered. "No, because as I increasingly, and Mr. Wolkind became increasingly involved in the collection process, we were able to, uh you know, dot our i's and cross our t's better. Obviously, the process was broken before, uh, and, we were able to come in and make sure that it was fixed and that everything that needed to done and needed to be received was received to the right place and answered in a timely manner and all of the correct procedures were taken."

On redirect from PIRS's counsel, Mallinger acknowledged that the decision to monitor any generic chapter 7 in which it was involved included a cost-benefit analysis premised on an expected minimal return. Also, he stated he was not personally aware of the Crossett Ford bankruptcy. Collectively, these reasons may explain, but do not excuse, PIRS's lack of attention to the Crossett Ford bankruptcy.

The Trustee testified. In determining where to serve PIRS, she first looked at the Proof of Claim for the correct address and to identify the authorized agent. She also looked at the court's website and the claims register to look for any changes. Further, she checked the website of the New York State Department of State to make sure Parsol was the agent. She received the signed return receipt. She recognized that Federal Rule of Bankruptcy Procedure 7004(b) only required first class mail; she took the extra step of sending it by certified mail to make sure it got to the place it was supposed to go. She sent a demand letter to the suite 1607 address prior to filing suit but received no response. She testified that was not unusual in her experience as a chapter 7 trustee. Additionally, other pleadings or notices sent to PIRS were not returned as undeliverable,

and she had no reason to believe they had not been received.  In sum, the Trustee took normal steps in ascertaining whom to serve.  The lack of response was not atypical.

### C.  Judgment

PIRS did not file an answer or otherwise respond to the Complaint.  Accordingly, this court entered, on January 11, 2018, a Default Judgment ("Judgment") in favor of the Trustee against PIRS in the amount of $156,864 plus $350 in filing fees, all to bear interest at the legal rate until paid.  (PIRS's Ex. 6.)  PIRS had no reaction for almost three years, or until October 2020.  Mallinger testified that is when PIRS first became aware of the Judgment.

Yet, evidently, PIRS was aware of the Crossett Ford bankruptcy and had directly participated in the case by filing its Proof of Claim with a name and address listed for notice purposes.  Thereafter, PIRS would have received at that address other significant pleadings and notices indicative of an adversary proceeding pending against it.  Specifically, a notice was sent on June 28, 2017, by the Bankruptcy Noticing Center (sometimes "BNC") to PIRS at the 40 Exchange Place, suite 1607 address of a status conference in the adversary proceeding.[7]  The Trustee filed a *Motion for Entry of Default and Motion for Default Judgment* on July 25, 2017.  (Bailey's Ex. E.)  The certificate of service reflected service on Parsol at the 40 Exchange Place, suite 1607 address.  (Bailey's Ex. E.)  The BNC, on July 28, 2017, notified PIRS at the suite 1607 address of a hearing scheduled October 12, 2017, on the Trustee's default motion.  On July 28, 2017, the clerk of the United States Bankruptcy Court executed an *Entry of Default* for PIRS's failure to "plead or otherwise defend" in the adversary proceeding.  This *Entry of Default* was sent by the BNC to PIRS at the suite 1607 address on July 30, 2017.  The BNC, on October 12, 2017,

---

[7] This and each BNC notification thereafter appeared to amplify the ZIP Code from 10005 to 10005-2729.

notified PIRS at the suite 1607 address of a continued hearing on the default motion to December 19, 2017.  The court entered the Judgment on January 11, 2018.  (PIRS's Ex. 6.)  On January 13, 2018, the BNC notified PIRS at the suite 1607 address of the Default Judgment.  There is no indication in the record that any of these notices or pleading were returned.  These operative events were in 2017 and early 2018.

Almost thirty-two months after entry of the Judgment, the court, on September 10, 2020, entered its *Order Sustaining Trustee's Objections to Claim Number 2* [PIRS'S claim].  (PIRS's Ex. 2.)  This order reflects "COPIES TO" PIRS at two addresses, suites 1607 and 403, both at 40 Exchange Place.  (PIRS's Ex. 2.)  The Notice Recipients list attached reflects the same two addresses as being submitted to the BNC.  (PIRS's Ex. 2).  The accompanying September 12, 2020 BNC Certificate of Notice reflects service on PIRS at suite 403.  (PIRS's Ex. 3.)  Commensurately, it reports the PIRS's address at suite 1607 as a "Bypassed Recipient[]" and goes on to state that it was identified "by the USPS National Change of Address system as undeliverable."  (PIRS's Ex. 3.)  Further, the Certificate of Notice provides that "[t]he debtor's attorney or pro se debtor was advised that the specified notice was undeliverable."  (PIRS's Ex. 3.)  The Trustee is not included in this representation.  The Trustee testified that after she received no response to the claim objection, she went to the internet and found the suite 403 address.  The Trustee testified that she never received a response to anything she sent to the 403 address, did not verify it was a correct address, treated it as an additional address, and added it to the order.

PIRS asserts that this was its first notice of some adverse action in the context of the Crossett Ford bankruptcy.  PIRS's reaction was to notify its counsel who in turn wrote the Trustee a letter via email on November 2, 2020.  (PIRS's Ex. 4.)  PIRS's counsel advised that it had only recently learned of the "sustained objection to its claim," and that, "[u]pon learning of the

13

objection," he researched and discovered the adversary proceeding of which he claimed his client was "entirely unaware." (PIRS's Ex. 4). He asked the Trustee to "vacate the default judgment," and allow PIRS to respond. (PIRS's Ex. 4.)

Around the same time, on September 14, 2020, the Trustee filed a *Motion to Sell and Notice of Opportunity to Object* seeking court authority to sell the Judgment. (PIRS's Ex. 5.) The original buyer was outbid by Bailey who purchased the judgment for $3,900 (PIRS's Ex. 5.) The court confirmed his purchase in its *Order Granting Motion to Sell Property* signed and filed on October 22, 2020. (PIRS's Ex. 5.) The Notice Recipients list reflects service to PIRS solely at suite 1607. (PIRS's Ex. 5.) The Trustee testified that she relied on the court's mailing matrix. The Trustee, however, presumably, at or about September 2020, had become aware of the suite 403 address as a potential address based upon the *Order Sustaining Trustee's Objections to Claim Number 2* filed September 10, 2020, which had both suites 1607 and 403 as recipients. (PIRS's Ex. 2.) Regardless, by October 2020, PIRS was aware of the Judgment and was reacting to the Trustee and then, eventually, the court by reopening the adversary proceeding and filing its Motion seeking relief from the Judgment.

At nearly the same time, at least by November 10, 2020, Bailey began collection efforts in the State of Georgia by his *Certification of Judgment for Registration in Another District* and *Application for Writ of Execution*. (PIRS's Exs. 6–7.) On January 4, 2021, after PIRS had again appeared, the clerk of the United States Bankruptcy Court entered a *Memorandum of Adversary Proceeding Returned Mail* in the adversary proceeding reflecting that the United States Postal Service returned as undeliverable an *Order on Emergency Motion of PIRS Capital, LLC to Shorten Time to Respond to Motion to Reopen Adversary Proceeding* entered on December 10, 2020.

14

D.  Full and Fair Opportunity to Litigate

PIRS argues that insufficient service denied it a full and fair opportunity to litigate this matter and, accordingly, should be relieved from the Judgment.  In support, PIRS offered testimony in the form of a letter from its counsel that reflected arguable and justiciable defenses to the Trustee's preference action.  (PIRS's Ex. 4.)

### III. Analysis

Pursuant to Federal Rule of Bankruptcy Procedure 7055, Federal Rule of Civil Procedure 55 applies in adversary proceedings.  FED. R. BANKR. P. 7055 (2021).  Federal Rule of Civil Procedure 55(c) states, "[t]he court . . . may set aside a final default judgment under Rule 60(b)."  FED. R. CIV. P. 55(c) (2021).  Further, "[d]ecisions to grant or deny a motion to set aside default judgment are within the sound discretion of the bankruptcy court."  *Emmons v. Emmons* (*In re Emmons*), 349 B.R. 780, 786 (Bankr. W.D. Mo. 2006) (citing *Jones Truck Lines, Inc. v. Foster's Truck & Equip. Sales, Inc.* (*In re Jones Truck Lines, Inc.*), 63 F.3d 685, 686 (8th Cir. 1995)).  Also, "[t]he concept of setting aside judgments should be construed narrowly in the interest of finality."  *Otto v. Otto* (*In re Otto*), 409 B.R. 912, 915 (Bankr. D. Minn. 2009) (citing *In re Rice*, 42 B.R. 838, 842 (Bankr. D. S.D. 1984).  And, "[t]he defaulting party has the burden of proof."  *Gambill v. Consumer Recovery Assocs.* (*In re Gambill*), 477 B.R. 753, 760 (Bankr. E.D. Ark. 2012).

PIRS seeks to set aside the Judgment on two surviving bases.  First, that pursuant to Federal Rule of Civil Procedure 60(b)(4), the Judgment is void as this court lacked jurisdiction because of improper service.  Second, that PIRS never had a full and fair opportunity to litigate its defenses to the Trustee's Complaint and is entitled to relief pursuant to Federal Rule of Civil Procedure 60(b)(6).

A.  Service

Pursuant to Federal Rule of Civil Procedure 60(b), made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9024, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (4) the judgment is void[.]" FED. R. CIV. P. 60 (2021).  Discretion is circumscribed in this instance as "[m]otions that allege that a judgment or order is void, however, if substantiated, are not discretionary but mandatory."  *Otto*, 409 B.R. at 915 (citing *Rice*, 42 B.R. at 842). Commensurately, "[i]f a defendant is improperly served, a federal court lacks jurisdiction over the defendant rendering a default judgment void under Rule 60(b)(4)."  *Emmons*, 349 B.R. at 787 (citing *Iowa Oil Co. v. T Mart Inc.* (*In re Iowa Oil Co.*), 299 B.R. 555, 560 (Bankr. N.D. Iowa 2003).  The Supreme Court has caveated that "[r]ule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."  *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).

Federal Rule of Bankruptcy Procedure 7004(b)(3) outlines the appropriate manner of service.

> [S]ervice may be made within the United States by first class mail postage prepaid as follows:
> (3) [u]pon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

FED. R. BANKR. P. 7004(b)(3).  Federal Rule of Bankruptcy Procedure 7004(f) outlines the necessary predicates and consequences.

16

>If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons . . . *in accordance with this rule* or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

FED. R. BANKR. P. 7004(f) (2021) (emphasis added).

Thus, the inquiry is whether the Trustee effected service "in accordance with" Federal Rule of Bankruptcy Procedure 7004(b)(3) and if the "exercise of jurisdiction is consistent with the Constitution and the laws of the United States." *Id*. The latter invokes the concept of due process, which in this instance "requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Espinosa*, 559 U.S. at 272. Further, "[d]ue process does not require . . . actual notice." *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Additionally, "[r]ule 60(b)(4) does not provide a license for litigants to sleep on their rights." *Espinosa*, 559 U.S. at 275.

*Ab initio*, Federal Rule of Bankruptcy Procedure 7004 reflects a more simplified procedure than required by the Federal Rules of Civil Procedure.

>The procedure set forth in Rule 7004, Federal Rules of Bankruptcy Procedure, governing service of process in adversary proceedings, [] significantly abbreviates the procedures for service by permitting service of a summons and complaint by first class mail. Unlike the Federal Rules of Civil Procedure, no acknowledgement of receipt of service is required under the Federal Rules of Bankruptcy Procedure.

*McElhaney v. Student Loan Services* (*In re McElhaney*), 142 B.R. 311, 313 (Bankr. E.D. Ark. 1992). As a result, "[t]he use of the abbreviated procedure, however, requires a higher standard of care when serving party defendants." *Id*. Equally:

> [t]he Federal Rules of Bankruptcy Procedure state with some specificity the method by which and upon whom service must be effected in order to provide notice of suit. In light of the comparatively abbreviated procedure in bankruptcy, it is of great importance that persons effecting service provide correct notice in accord with the rules.

*Id.* at 312.

The Trustee served PIRS by a letter dated March 14, 2017, with process sent by certified mail and addressed as follows:

> PIRS Capital, LLC
> Attention: Alexander Parsol, Managing Partner
> 40 Exchange Pl., Suite 1607
> New York, NY 10005

(Bailey's Ex. B.) There is no dispute or issue raised as to whether process was otherwise insufficient. PIRS asserts that Parsol was no longer a managing partner as he had left PIRS in February 2016 and that PIRS was no longer at suite 1607 but, in September 2016, had moved to suite 403 in the same building. The Trustee addressed the service letter to Parsol at suite 1607 in March 2017, several months after both events.

Accordingly, and *facially*, the Trustee did not serve her Complaint to the right address or "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process[.]" FED. R. BANKR. P. 7004(b)(3). Regardless, the court is convinced that the Trustee's service was in accordance with Federal Rule of Bankruptcy Procedure 7004 and consistent with due process, thus rendering PIRS amenable to the personal jurisdiction of this court sufficient to enter the Judgment. Several bases compel this result.

First, the Trustee effected service exactly as PIRS requested. PIRS filed a Proof of Claim in the Crossett Ford bankruptcy, which submitted it to the jurisdiction of this court. *E.g.*, *Espinosa*, 559 U.S. at 275 (concluding that the creditor submitted itself to the bankruptcy court's jurisdiction

when it filed a proof of claim in the debtor's bankruptcy case).  Equally, the filed Proof of Claim provided specific information as to the person and place where notices should be sent with an equivalent obligation—as set forth in the claim instructions—to supplement or update that information.  PIRS, in its Proof of Claim, noted Parsol as the managing partner at the suite 1607 address.  PIRS never supplemented, changed, or altered the name or address on its Proof of Claim.

The Trustee's reliance on the Proof of Claim was not misplaced. Relating to notice generally, Federal Rule of Bankruptcy Procedure 2002(g) provides:

> (1) [n]otices required to be mailed under Rule 2002 to a creditor, indenture trustee, or equity security holder shall be addressed as such entity or an authorized agent has directed in its last request filed in the particular case. For the purposes of this subdivision—
>> (A) a proof of claim filed by a creditor or indenture trustee that designates a mailing address constitutes a filed request to mail notices to that address, unless a notice of no dividend has been given under Rule 2002(e) and a later notice of possible dividend under Rule 3002(c)(5) has not been given[.]

FED. R. BANKR. P. 2002(g).   Using a proof of claim address as a basis for service is not unprecedented.  For example, the court stated in *In re Wilkinson*:

> Rule 7004(b)(3) provides that service may be made in the following manner: "[u]pon a domestic or foreign corporation ... by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, *or to any other agent authorized by appointment* or by law to receive service of process ..." Fed. R. Bankr.P. 7004(b)(3) (emphasis added). In *In re Chess*, the bankruptcy court for the Western District of Tennessee held that, based on the facts of that case, an address designated by a creditor satisfied the "appointment" requirement of Rule 7004(b)(3). 268 B.R. 150, 157–58 (Bankr.W.D.Tenn.2001). . . . Other courts have similarly concluded that the agent and address designated by a creditor on its proof of claim evidences "appointment," thus satisfying the service requirements of Rule 7004(b)(3). *See, e.g., Deutsche Bank Nat'l Trust Co. v. Rogan (In re Allen),* 417 B.R. 850, 853 (E.D.Ky.2009) ("Appellant Deutsche listed Litton's Bankruptcy Department as its agent on the proof of claim for all notices regarding the bankruptcy case, which serves as an 'appointment' under the Rule [7004(b)(3) ]."); *In re Ms. Interpret,* 222 B.R. 409, 413 (Bankr.S.D.N.Y.1998) (mailing to address and agent listed on proof of claim satisfied Rule 7004(b)(3)); *In re Rushton,* 285 B.R. 76, 81 (Bankr.S.D.Ga.2002) (following *Ms. Interpret* ); *Green Tree Fin. Servicing Corp. v. Karbel (In re Karbel),* 220 B.R. 108, 112 (10th Cir.

BAP 1998) (notice sent to address designated by creditor as proper address to send notice to satisfied requirements of Rule 7004(b)(3)); *In re Village Craftsman,* 160 B.R. 740, 745 (Bankr.D.N.J.1993) (same); *Cruisephone, Inc. v. Cruise Ships Catering and Servs. N.V. (In re Cruisephone, Inc.),* 278 B.R. 325, 332–333 (Bankr.E.D.N.Y.2002) (noting that "[t]here is ample authority for the proposition that service of process to the address designated in a proof of claim constitutes proper service under Bankruptcy Rule 7004(b)(3)"). In short, because the trustee satisfied the requirements of Rule 7004(b)(3), EMC suffered no violation of its due process rights. EMC has thus failed to establish cause for reconsideration of the order disallowing its claim under either section 502(j) or Rule 60(b)(4) of the Federal Rules of Civil Procedure.

*In re Wilkinson*, 457 B.R. 530, 548–49 (Bankr. W.D. Tex. 2011). See also, *Ms. Interpret*

*v. Rawe*, stating:

> The debtor relies upon *In re Village Craftsman, Inc.*, 160 B.R. 740, 745 (Bankr.D.N.J.1993) to support its proposition that not only is the address in a proof of claim proper for notices that relate to its proof of claim but it is also the proper address for service of process under Fed. R. Bankr.P. 7004(b)(3). There, the debtor served its motion papers on a creditor, a domestic corporation, by mailing the papers to the creditor's post office box. This post office box was the address the creditor designated on its proof of claim as "the address to which all notices to this claimant should be addressed." *Id*. at 745. The creditor argued that the debtor did not effect proper service in that the motion papers were not mailed to an officer or agent of the creditor pursuant to Fed. R. Bankr.P. 7004(b)(3). Because the creditor designated the post office box as the address to receive notices, the court ruled that the creditor "held the address out to be the proper address for service under Bankruptcy Rule 7004(b)(3)" and, therefore, that the debtor properly served the creditor. *Id*.

*Ms. Interpret v. Rawe* (*In re Ms. Interpret*), 222 B.R. 409, 414–15 (Bankr. S.D. N.Y. 1998).

In sum, the Trustee mailed her process to the exact name and address PIRS requested. That alone is arguably sufficient, but other bases equally and cumulatively compel the same result.

Second, the Trustee's due diligence did not stop with the Proof of Claim. She also checked with the New York State Department of State to "confirm that Mr. Parsol was the appropriate agent" and there obtained equivalent information. The Department of State information reflected no registered agent for service leaving Parsol as the person to whom it would mail process, albeit

at an incorrect suite 1606 address that the Trustee unilaterally corrected to 1607.[8]  (Bailey's Ex. K.)

The Proof of Claim and the information at the New York State Department of State all represent information PIRS supplied and published.  PIRS was neither a neophyte nor stranger to litigation and, presumably, fully understood the significance of the information supplied on a proof of claim form, unequivocally reinforced by the actual wording of the form concerning names and addresses.  Also, PIRS had to have understood and known the consequences of listing a name and address with the New York State Department of State to whom process would be forwarded in lieu of a registered agent.  Despite Parsol having left and PIRS having moved in 2016, the then extant information remained published and unchanged when the Trustee engaged in her March 2017 due diligence prior to service.  PIRS's explanations, as testified to by Mallinger, for these lapses included falling "through the cracks," failing to pick "up the slack," and imagining that "any legal matter prior to [Mallinger] coming on and [PIRS's attorney] coming on was probably not properly managed."  Additionally, Mallinger admitted that "obviously some of the administrative actions that should have been taken were not and that's obviously our fault."  And, "there could have been administrative lapses in terms of us updating our address everywhere we needed to."  Further, PIRS could not unequivocally testify whether it had even bothered to leave a forwarding address when it moved.  Tellingly, Mallinger acknowledged that the decision to monitor any generic chapter 7 in which PIRS was involved was based on a cost-benefit analysis anticipating a minimal return.

---

[8] Had the Trustee reviewed PIRS's webpage, she would have found that it reflected the 40 Exchange Place address without a suite number.  (PIRS's Ex. 10.)

And yet, despite the hurdles PIRS erected in its own way, the record indisputably reflects that a PIRS's employee located at the new suite 403 address did receive the Trustee's service. The letter successfully arrived at that address and Laranaga, an employee at PIRS located at suite 403, signed a receipt.

Succinctly, and again, the Trustee served PIRS exactly as PIRS asked her to. PIRS published to and notified the world through the New York State Department of State and, specifically, the Crossett Ford bankruptcy through its Proof of Claim of the exact name and address to which it wanted notice. The Trustee acted specifically as instructed. The Trustee's service relied appropriately and solely on information PIRS published. Relieving PIRS from the consequences would render proof from effective service or commensurate default any corporation or entity that had not properly listed or brought current its address or agent for purposes of service.

Third, from all appearances, Parsol remained as PIRS agent for purposes of service regardless of his employment status or address. Without dispute, Parsol left PIRS in February 2016. Regardless, his name remained as the person to whom notices in the Crossett Ford bankruptcy should be sent as well as process forwarded from the New York State Department of State. Equally, and without dispute, PIRS moved within the same building to a different suite in September 2016. Again, and regardless, the 1607 suite number remained the published address on both the Proof of Claim and, albeit referencing 1606, with the New York State Department of State. As for the latter, the record is clear that service properly mailed to the suite 1607 address actually arrived at the PIRS suite 403 office. As for the former, Federal Rule of Bankruptcy Procedure 7004(b)(3) contemplates service on "an officer, a managing or *general agent, or to any other agent authorized by appointment or by law to receive service of process*[.]" FED. R. BANKR. P. 7004(b)(3) (emphasis added). Even if Parsol was no longer an officer or managing agent

employed at PIRS, there is no reason why his relationship with PIRS could not have been as a "general agent, or [] any other agent authorized by appointment" to receive service. *Id*. The designation of Parsol as the person to whom the New York State Department of State would forward process did not include any reference to him as a manager, managing partner, or otherwise. His name and address is simply given as the person and place to whom and to which process would be forwarded. Not only was there no reason for the Trustee to suspect otherwise, she was expressly relying on information specifically published by PIRS with respect to its agent for notice and to whom process would be directed. "An agent's authority to accept process on [a] corporation's behalf may be implicit or explicit." *Price v. America's Servicing Co.* (*In re Price*), 377 B.R. 224, 227–28 (Bankr. E.D. Ark. 2007) (quoting *Reisman v. First New York Bank for Business* (*In re Reisman*), 139 B.R. 797, 800 (Bankr. S.D. N.Y 1992)). Here, Parsol's authority was, if anything, explicit. Failing that, it was at worst implicit.

Fourth, an officer or managing agent leaving a business entity is not a new phenomenon and, presumably, there are occasions when records are not timely updated. *Gambill v. Consumer Recovery Associates* dealt with a similar set of circumstances. In *Gambill*, the plaintiff attempted service on an insured depository institution by mail addressed to an officer pursuant to Federal Rule of Bankruptcy Procedure 7004(h). *Gambill*, 477 B.R. at 761. The letter was directed to "Barclays Bank Delaware, c/o Lloyd M. Wirshba, CEO[.]" *Id*. Unfortunately, Mr. Wirshba was no longer with the company. *Id*. Nevertheless, the *Gambill* court found the service valid.

> The Court agrees with the reasoning set out in the case of *In re Outboard Marine Corp.*, 359 B.R. 893, 900 (Bankr.N.D.Ill.2007). In that case, the court made the following statements while examining a similar "service on an officer" requirement for providing service to a corporation:

> In order for a plaintiff to ascertain an officer or managing or general agent of a corporation, he must do a search of state records. Some corporations do not keep those records updated, and frequently, officers change during a company's fiscal year without the immediate updating of the annual report filed with the secretary of state to reflect those changes. In such a scenario, if a plaintiff was to list "John Doe" as the officer or managing or general agent of a corporation, and John Doe was no longer in that capacity because the corporation failed to update its records, service of process would be defective under this logic. Inaccurate corporate records would unfairly render otherwise adequate and proper service invalid. The Court rejects the argument that Bankruptcy Rule 7004(b)(3) requires a plaintiff to take the extra step of searching state records in order to ascertain the specific name of a corporate officer or managing or general agent, and then serve that individual by name as such officer or agent. The plain language of the Rule requires only that the mailing be directed to the attention of the officer or agent by reference to his position or title, not by reference to his name. The present text of the Rule makes no such requirement. If the drafters of Bankruptcy Rule 7004(b)(3) intended for a plaintiff to serve an officer or agent by name, they could have included the necessary language. Instead, as noted by the court in *C.V.H. Transport*, those drafters rejected the notion that the officer or agent be named in the address. [*In re C.V.H. Transport*, 254 B.R. 331, 333 (Bankr.M.D.Pa.2000) ].

> *In re Outboard Marine Corp.*, 359 B.R. at 900–01 (emphasis added). Although *In re Outboard Marine* dealt with service on an officer of a corporation, the same interpretation should apply when the requirement is to serve an officer of an insured depository institution, pursuant to Fed. R. Bankr.P. 7004(h).

*Gambill*, 477 B.R. at 761–62.

This court is uncomfortable with the idea that no individual should be named, but in the current instance, service was directed to Parsol as the person specifically identified on PIRS's Proof of Claim and at the New York State Department of State.   Conversely, this court is comfortable with the *Gambill* court's recognition that an entity served by legal process should not benefit from its own inaccurate or dated records when others attempt in good faith to determine the appropriate agent for service.   The Trustee mailed her letter first to "PIRS Capital, LLC," then to "Attention: Alexander Parsol, Managing Partner."   (Bailey's Exs. B–C.)   Nothing about that address indicates that it is anything other than a letter to Parsol in his capacity as a managing

partner of PIRS.  PIRS should have been well aware that Parsol had been, and continued to be, listed with the New York State Department of State as the person to whom process should be directed.  Further, PIRS had an equal responsibility to update its address in the Crossett Ford bankruptcy.  If a creditor's address changes:

> [t]he creditor is responsible for notifying the debtor, trustee, or the court of any changes in her mailing address to guarantee that she be given reasonable notice.  If the creditor fails to up-date her address and as a consequence does not receive a notice of the bar date that was properly mailed, she cannot later argue that her due process rights were violated.

*Greyhound Lines, Inc. v. Rogers* (*In re Eagle Bus Mfg., Inc.*), 62 F.3d 730, 736 (5th Cir. 1995) (citation omitted).

Further, in *Teitelbaum v. Equitable Handbag Co.*, the court found that service was proper, and "there was 'notice reasonably calculated' to give [the defendant] actual notice of the proceedings," when "the summons and complaint were actually received by [the defendant] at the very address which was set forth in its proof of claim." *Teitelbaum v. Equitable Handbag Co.* (*In re Outlet Dep't Stores, Inc.*), 49 B.R. 536, 540 (Bankr. S.D. N.Y. 1985.)  The court stated, "[g]iven that [the defendant] in its proof of claim provided this address to the trustee, it cannot now claim that service of process at that address was either defective or violative of [its] rights."  *Id*.

Prudence, or even bear minimum attention, would dictate that when your agent or address for service changes that you would either amend your publications accordingly or anticipate that that person and/or address would continue being served and make accommodations accordingly. PIRS did neither but seeks to relieve itself of the consequences by inappropriately shifting them entirely to the Trustee.

Fifth, PIRS argues that certified mail somehow diminishes the first-class status of the correspondence and that only Parsol could sign for the letter.  These arguments are misplaced.

Specifically, Federal Rule of Bankruptcy Procedure 7004 requires only first-class mail. Certified mail heightens the addressee's attention and guarantees proof of delivery. Additionally, any distinction is mooted because the return receipt reflects that PIRS actually received a copy of the summons and Complaint. In other words, the goal of delivery presumably guaranteed by first class mail was fully accomplished. *Compare Gazes v. Kesikrodis* (*In re Ted A. Petras Furs, Inc.*) 172 B.R. 170, 176 (Bankr. E.D. N.Y. 1994) (holding service by certified mail complies with Federal Rule of Bankruptcy Procedure 7004(b)), with *Frazier v. Frazier* (*In re Frazier*) 394 B.R. 399, 400–02 (Bankr. E.D. Va. 2008) (holding service by certified mail was not effective under Federal Rule of Bankruptcy Procedure 7004(b) when the certificate of service showed the certified mail was returned unclaimed). Additionally, there was no requirement that only the addressee sign for the certified letter, only that a recipient confirm delivery.

Larranga signing for the letter does not change the fact that it was directed to Parsol at an address published by PIRS and received by PIRS. Unquestionably, the correct PIRS's office at its then current operating address received the Trustee's letter addressed first to PIRS, then to the attention of Parsol as managing partner, with the additional gravitias of certified mail, all for which should have put PIRS on notice that this was a document that deserved its attention.

Despite PIRS's arguments to the contrary, the Trustee did serve PIRS by the right name at the right address. She served PIRS exactly where it asked her to based on the Proof of Claim it filed and the information it supplied to the New York State Department of State. Further, actual receipt was confirmed. There is no requirement that the actual officer, manager, or agent sign for the letter, just that it be directed to the officer, manager, or agent. This, the Trustee did. The Trustee is not responsible for PIRS's failure to adequately accommodate its changed circumstances. As stated above, relieving PIRS from the consequences would render proof from

effective service or commensurate default any corporation or entity that had not properly listed or brought current its address or agent for purposes of service.

### B. Any Other Reason that Justifies Relief

Pursuant to Federal Rule of Civil Procedure 60(b), made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9024, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (6) any other reason that justifies relief." FED. R. CIV. P. 60 (2021).   As courts have stated: "[r]elief is available under Rule 60(b)(6) only where exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress."  *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005) (citation omitted).

> As stated in *Gambill*:
>
> "[T]here is a 'judicial preference for adjudication on the merits [that] goes to the fundamental fairness of the adjudicatory process.' " *Price v. Am.'s Servicing Co.,* 388 B.R. 901, 906 (Bankr.E.D.Ark.2008) (citing *Oberstar v. Fed. Deposit Ins. Corp.,* 987 F.2d 494, 504 (8th Cir.1993)). In the context of a request to set aside a default judgment, courts within the Eighth Circuit typically evaluate the "judicial preference for adjudication on the merits" by reviewing for "the existence of a meritorious defense." *Union Pacific R. Co. v. Progress Rail Services Corp.,* 256 F.3d 781, 783 (8th Cir.2001) ("We have also concluded that 'the existence of a meritorious defense continues to be a relevant factor' in deciding these kinds of cases after *Pioneer Investment.*") (citation omitted).

*Gambill*, 477 B.R. at 763.

PIRS argues that the Trustee's failure to properly effect service denied it the opportunity to fully and fairly litigate the subject matter of the Complaint.  The record is sufficient that PIRS enjoys at least justiciable defenses sufficient to meet the arguable existence of a meritorious defense.  This argument fails, however, because, as outlined above, the Trustee did properly effect

service pursuant to Federal Rule of Bankruptcy Procedure 7004. Thereafter, PIRS had every opportunity procedurally and substantively to defend itself. It did not.

This court adheres to and is guided by the general philosophy that defaults are disfavored, and litigation should, more often than not, proceed on the merits. This case presents an uncomfortable but appropriate adherence to the rules over the philosophy. The Trustee served PIRS exactly as it requested. PIRS acknowledges its lack of attention to the Crossett Ford bankruptcy based on internal oversights, a cost-benefit analysis, its administrative failures in amending its Proof of Claim and changing its agent for service with the Department of State, its failure to properly tend to forwarding mail, and basically ignoring a letter clearly addressed to it with obvious service implications that should have invited its full attention. Additionally, throughout the course of the Crossett Ford bankruptcy, there were numerous notices and other pleadings sent to PIRS, the vast majority of which were not returned—all related to the adversary proceeding against PIRS, PIRS's claim, and the sale of the Judgment. The Trustee did exactly as she should. Setting aside the Judgment under these circumstances is an unwarranted abjuration of the Federal Rules of Civil Procedure and would render almost any default judgment amenable to avoidance on application.

### IV. Conclusion

For the reasons stated herein, the relief requested in the Motion is denied.

IT IS SO ORDERED.

Dated this 16th day of April, 2021.

_____
HONORABLE RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE

cc:     Charles T. Coleman
        Renee S. Williams
        Mary-Tipton Thalheimer